IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SONYA CHAPMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2188-D-BN |
| | § | |
| ADT LLC, | § | (Consolidated with: |
| | § | No. 3:23-cv-799-D-BN) |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

In this consolidated action filed *pro se* and referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from Senior United States District Judge Sidney A. Fitzwater, *see* Dkt. No. 24, Plaintiff Sonya Chapman filed a court-ordered second amended complaint on August 21, 2023, *see* Dkt. Nos. 25 & 27.

Defendant ADT LLC moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 39. Chapman responded, *see* Dkt. No. 43, and ADT replied, *see* Dkt. No. 50.

Chapman then filed a motion on November 18, 2023 that the Court has construed as seeking leave to supplement the second amended complaint to add a specific claim for declaratory relief. *See* Dkt. Nos. 55 & 56.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant ADT's motion to dismiss the second amended complaint, deny

Chapman's motion for leave to supplement (or to further amend), and dismiss Chapman's claims under federal law and the Texas Constitution with prejudice and relinquish jurisdiction over any remaining claims under Texas common law, dismissing those claims without prejudice.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of*

*Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)

(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006),

the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

And, "[u]nder Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir.1998) (citing Fed. R. Civ. P. 15(d)).

"While the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide." *Id.* Instead, "Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances." *Id.*

Even so, "[j]udicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a)." *Tomasella v. Div. of Child Support*, No. 3:20-cv-476-S-BH, 2021 WL 3710659, at *2 (N.D. Tex. Aug. 20, 2021) (citing *Hyde v. Hoffman-La Roche Inc.*, No. 3:04-cv-1473-B, 2008 WL 2923818, at *3 (N.D. Tex. July 30, 2008)). "These factors include … the futility of amendment." *Id.* (quoting *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)).

## Analysis

Liberally construed, Chapman alleges violations of Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act (the "ADEA"); Chapter 21 of the Texas Labor Code; 42 U.S.C. §§ 1981, 1985, and 1986; the United States and Texas Constitutions; and Texas's common law.

## I.    Chapman fails to allege a plausible claim based on asserted violations of the United States and Texas Constitutions.

Starting with Chapman's claims based on constitutional violations, where a plaintiff alleges violations of the U.S. Constitution, 42 U.S.C. § 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).

"A plaintiff makes out a § 1983 claim [only] if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"The traditional definition of acting under color of state law requires that the defendant … have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). And "[p]rivate individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (cleaned up).

Chapman fails to plead "factual content that allows the court to draw the reasonable inference that [ADT] is liable" under Section 1983, *Iqbal*, 556 U.S. at 678, by showing that its conduct is fairly attributable to the State, including by failing to allege facts that could show that ADT participated in a conspiracy with state actors, *see Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted); *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021).

Chapman also has not alleged a claim under the Texas Constitution because

> Texas does not have an implied private right of action for damages for violation of constitutional rights. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147-48 (Tex. 1995). That is, Texas does not have a § 1983 equivalent. *Allison v. City of Fort Worth*, 60 F. Supp. 2d 589, 596 (N.D. Tex. 1999).

*Freeland v. Tarrant Cnty., Tex.*, No. 4:18-cv-845-A, 2019 WL 339452, at *5 (N.D. Tex. Jan. 28, 2019); *see also McLean v. Meeks*, No. 3:15-cv-3037-C, 2015 WL 13851039, at *2 (N.D. Tex. Nov. 5, 2015) ("[T]here is no cognizable state law cause of action for damages for the alleged violation of rights secured under the Texas Constitution because there is no enabling statute under Texas law equivalent to § 1983 allowing a private right of action for damages against governmental entities for violations of the Texas Constitution." (citing *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007) (citing, in turn, *Bouillion*); *Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993))).

## II.    Chapman fails to allege plausible claims based on asserted violations of Title VII, the ADEA, and Chapter 21.

Turning to Chapman's alleged violations of Title VII, the ADEA, and Chapter 21, the undersigned will address the alleged violations of these statutes under the federal legal framework, considering that "[a] purpose of Chapter 21 is to execute the

policies embodied in Title VII" and the ADEA. *Green v. Costco Wholesale Corp.*, No. 3:15-cv-1868-N, 2017 WL 10110295, at \*3 n.2 (N.D. Tex. May 30, 2017) (citing *Allen v. Solo Cup Co.*, No. 3:05-cv-848-R, 2006 WL 1949455, at \*4 (N.D. Tex. July 13, 2006); TEX. LABOR CODE ANN. §§ 21.001, 21.002, 21.003, 21.006); *accord Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (per curiam).

To plausibly allege – and ultimately prove – claims under Title VII and the ADEA, Chapman must rely on direct evidence and/or proceed under a burden-shifting analysis. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) ("In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." (footnote omitted)).

"[D]irect evidence is rare" and has been defined by the Fifth Circuit "as evidence which, if believed, proves the fact without inference or presumption." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (cleaned up).

For example, "[a] statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination." *Id.* (cleaned up). While comments that require "inference or presumption are considered only stray remarks." *Price v. Valvoline, L.L.C.*, ___ F.4th ____, No. 23-20131, 2023 WL 8723421, at \*4 (5th Cir. Dec. 15, 2023) (cleaned up; quoting *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th Cir. 2015) (describing the "ultimate focus" "[t]o determine whether comments in the workplace constitute direct evidence, or only stray remarks," is "whether the comments prove, without inference

or presumption, that race was a basis in employment decisions in the plaintiff's workplace" (cleaned up))).

Insofar as Chapman's allegations reflect a lack of direct evidence, the first step in the burden-shifting analysis requires a plaintiff to articulate a prima facie case as to each cause of action.

A plaintiff need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).

A district court may therefore rely on the prima facie elements "to frame [its] inquiry" at the pleading stage. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (*Raj* "does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 n.1 (5th Cir. 2017) ("Although not a pleading standard, this court has looked to the 'evidentiary framework' set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a plaintiff pleads discriminatory intent." (cleaned up)).

So, at this stage, the Court must ask whether Chapman has pled enough facts, accepted as true, to plausibly allege each employment-based claim. *See Swierkiewicz*

*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002).

And, if she "has not pled such facts," it is "proper[ to] dismiss" that claim. *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

> The prima facie elements of a Title VII discrimination claim are that a plaintiff
>
> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citation omitted).

To the extent that Chapman also brings a claim of age discrimination, "[t]he prima facie elements of a cause of action for violation of the ADEA are, the plaintiff: 1) is within the protected class; 2) is qualified for the position; 3) suffered an adverse employment decision; and 4) was replaced by someone younger or treated less favorably than similarly situated younger employees." *Saunders v. Hous. Foam Plastics*, No. SA-23-CV-00156-XR, 2023 WL 3313118, at *5 (W.D. Tex. May 5, 2023) (citing *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013)).

And, "[i]n the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare,*

*Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

Chapman's 76-page operative complaint overflows with conclusory assertions but lacks the requisite facts to allege a plausible claim of discrimination based on a protected class where Chapman alleges that she "attempted to perform her job duties during training but [ADT] refused to properly train [her]" – and therefore "undermin[ed] the work [Chapman] did" – but fails to allege facts from which the Court may infer that she was treated less favorably than other similarly situated employees outside her protected class. Dkt. No. 27 at 44; *see, e.g.*, *id.* at 44-74.

The closest Chapman comes to demonstrating this required element is by alleging that, while an asserted basis for her termination was that she "can't perform her job duties without continuous help from the training team," employees other than her "reached out to the chat for support" multiple times but were not terminated. *Id.* at 71-74 (emphasis omitted).

And, while Chapman does identify these other employees by name and by the number of times each allegedly "reached out to the chat for support," *id.* at 41-42 & 72, such factual assertions fall short of those required to plausibly allege the fourth element of discrimination claims under Title VII and the ADEA, which instead requires "an employee [to] proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories,'" *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir.

2012) (per curiam) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)); *see also Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041, 1054-55 (S.D. Tex. 2019) (applying *Lee* to an ADEA claim); *Marable v. Dep't of Commerce*, No. 3:18-cv-3291-N, 2021 WL 536510, at *10 (N.D. Tex. Jan. 28, 2021) ("Marable's ability to establish a prima facie case of discrimination under Title VII and the ADEA turns on his identifying a proper comparator, to meet the fourth prong."), *rec. accepted*, 2021 WL 535851 (N.D. Tex. Feb. 12, 2021), *aff'd*, 857 F. App'x 836 (5th Cir. 2021).

Chapman also appears to allege a hostile work environment, "a specific discrimination claim under Title VII," *Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 18-19 (1993)), as well as under the ADEA, *see Boyd v. Monroe City Hall*, No. 3:20-CV-01473, 2021 WL 1305385, at *7 (W.D. La. Mar. 8, 2021) (citing *Rogers v. E.E.O.C.*, 454 F.2d 234, 238-39 (5th Cir. 1971) (Title VII); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (ADEA)), *rec. accepted*, 2021 WL 1299204 (W.D. La. Apr. 7, 2021); *see, e.g.*, Dkt. No. 27 at 61 ("Plaintiff was subject to unwelcome harassment, the harassment was based on Plaintiffs race, age, and sex, the harassment was severe and pervasive so as to alter the conditions of Plaintiffs work environment by creating a hostile and abusive situation, there is a basis for employer liability.").

The essential elements of a hostile work environment claim are:

(1) [the plaintiff] belongs to a protected group; (2) he was subjected to unwelcome harassment based on the protected characteristic; (3) that the alleged harassment affected a term, condition, or privilege of employment by creating an objectively intimidating, hostile, or offensive work environment; and (4) there is some basis of liability for the employer.

*Boyd*, 2021 WL 1305385, at *7.

So, "[w]hen a workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, [the statute] is violated." *Hudson*, 58 F.4th at 229 (cleaned up; quoting *Harris*, 510 U.S. at 21 (quoting, in turn, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986))).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) (cleaned up; quoting *Aryain v. Wal-Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)).

Courts in this circuit apply "an objective 'reasonable person' standard to evaluate severity and pervasiveness." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

"And [the Fifth Circuit's] caselaw is clear that 'subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment.'" *Price*, 2023 WL 8723421, at *4 (quoting *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 106-07 (5th Cir. 2009) (per curiam)).

The facts alleged by Chapman as a basis for this claim again concern how ADT treated her during training:

> When Plaintiff complained to Defendants and asked why she was receiving different treatment than her coworkers during on-the-job training Defendants said they were "only worried about you," Plaintiff. Plaintiff contends the work environment was hostile because

> Defendants singled her out by requiring her to train for an additional 2 days making it look like she needed more time than the rest of the class time to learn her new role. Defendants made it look as if Plaintiff was the only person in the training class that needed additional training in their corrective action, and in the phone conversation Plaintiff had with Defendant Ashley Merrick training manager, Defendants made it look like Plaintiff with the additional training could not perform her job duties, which is false.

Dkt. No. 27 at 7 (cleaned up); *see also id.* at 40 ("Defendants intentionally deprived Plaintiff of an equal employment opportunity related to the terms, and conditions of her employment by creating a hostile work environment, when they refused to train her, and by treating her unfavorably and different than similarly situated white employees."); *id.* at 60 ("Defendants were hostile towards Plaintiff during both training periods 2021 and 2022, forcing Plaintiff to ask Defendants to go over what she lacked at the end of the remaining training days in March 2022, the training staff gave poor performance reviews without going over ways to improve.").

But Chapman alleges no facts from which the Court could infer that she was subjected to unwelcome harassment because of a protected characteristic. Nor do Chapman's allegations of hostility, objectively evaluated, reflect the severity and pervasiveness necessary to affect a term, condition, or privilege of her employment.

Turing to Chapman's retaliation claims, such claims require that a plaintiff engage in a statutorily protected activity. And "[a]n employee engages in protected activity when she opposes an unlawful employment practice." *Landry v. Leesville Rehab. Hosp., L.L.C.*, No. 21-30423, 2022 WL 358168, at *6 (5th Cir. Feb. 7, 2022) (per curiam) (citing 42 U.S.C. § 2000e-3(a)).

Chapman alleges multiple examples of her opposing an action in the course of

her employment. For example, she alleges that ADT

> retaliated against her for simply opposing their treatment, and that she simply opposed their treatment by continuing to request to take notes, by continuing to take notes, using Defendants software on their computers, as it was the only way Defendants would allow her to take notes, and by arguing that she was being treated unfairly by receiving corrective actions for asking questions during training when all the training class had continued questions, and that the overall treatment she was receiving was unfair, partial, prejudiced, and or discriminating.

Dkt. No. 27 at 10-11; *see also id.* at 13 (alleging retaliation based on being compared "to the rest of the training class"); *id.* at 15-16, 20, 48, & 60 (alleging retaliation for her opposition to how she was trained and her opposition to "corrective actions written against her").

But, in setting out her various retaliation contentions, Chapman fails to allege facts that could show that she opposed an employment practice that violated Title VII (or any other related statute).

## III.  Chapman fails to allege plausible claims based on asserted violations of 42 U.S.C. §§ 1981, 1985, and 1986.

In addition to Section 1983, Title VII, and the ADEA, Chapman's complaint references three other federal statutes: 42 U.S.C. §§ 1981, 1985, and 1986.

Section 1981 "generally forbids racial discrimination in the making and enforcement of private contracts, including private employment contracts, whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) (citations omitted).

The statute "guarantees to '[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting 42

U.S.C. § 1981(a)).

And, "[w]hile the statute's text does not expressly discuss causation, it is suggestive," such that, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. ____, 140 S. Ct. 1009, 1015, 1020 (2020); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citing *Comcast*, 140 S. Ct. at 1014)); *Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 740 n.2 (11th Cir. 2020) (per curiam) ("§ 1981's pleading standard for discrimination claims is at least as, if not more, restrictive than Title VII" (citations omitted)).

As multiple courts have observed since *Comcast*, a plaintiff's failure to plead a plausible Title VII claim requires dismissal of the related Section 1981 claim. *See, e.g., Karupaiyan v. CVS Health Corp.*, 19 Civ. 8814 (KPF), 2023 WL 5713714, at *18 (S.D.N.Y. Sept. 5, 2023) ("Section 1981 sets a higher bar. In particular, a plaintiff must plausibly allege that '*but for* race, [he] would not have suffered the loss of a legally protected right.' Importantly, mixed-motive claims that would succeed under Title VII and [New York state law] necessarily fall short under Section 1981, as 'it is insufficient to merely plead that race was a motivating factor in the discriminatory action.'" (citations omitted)).

The Court should similarly conclude that Chapman's Section 1981 claims meet the same fate as her Title VII claims where she fails to allege that race was the but-

for cause for the discrimination she assets. So those claims should be dismissed as not plausibly pled.

Chapman also throws in citations to Sections 1985 and 1986. But she alleges no unique facts to support claims under these statutes. These claims should therefore be dismissed for the following reasons.

"Section 1985(1) prohibits conspiracies 'to prevent, by force, intimidation, or threat' a federal officer from discharging his duties or to injure him because of his lawful discharge of his duties," and "Section 1985(2) prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection," *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (citations and footnote omitted), while "Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws," *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 978 (5th Cir. 1986) (footnote omitted).

And "Section 1986 penalizes those with knowledge of and the power to prevent § 1985 conspiracies who fail to do so." *Bryant*, 597 F.3d at 687.

While "[a] cause of action under § 1985(1) requires no allegation of racial or class-based discriminatory animus," *id.* at 688 (citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)), Chapman's allegations do not implicate a federal officer.

And both Sections 1985(2) and 1985(3) require allegations "that the conspirator's action was driven by race or class-based discriminatory animus." *Williams v. City of Irving*, No. 3:15-cv-1701-L, 2018 WL 4145052, at *7 (N.D. Tex. Aug. 30, 2018) (citing *Bryant*, 597 F.3d at 687; *Daigle*, 794 F.2d at 979); *see also*

- 19 -

*Bryant*, 597 F.3d at 687 ("The 'language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or ... class-based, invidiously discriminatory animus behind the conspirator's action.' *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added) (referring to § 1985(3)). This Circuit has held that the class-based animus requirement of § 1985(3) applies equally to causes of action under the second clause of § 1985(2) such as Bryant's claims here. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (noting the parallel language in §§ 1985(2) and 1985(3) prohibiting certain conduct with an intent to deny '*equal protection* of the laws').").

Chapman fails to plausibly plead such allegations. Nor has she pled facts to allege a conspiracy.

But, even if she had, "if the conduct that a plaintiff complains of stems from employment discrimination, the plaintiff's claim is not cognizable under § 1985(3); such claims must be brought under Title VII." *Arensdorf v. Everson*, Civ. A. No. H-07-2703, 2008 WL 2229745, at *4 (S.D. Tex. May 27, 2008) (citing *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001) (citing, in turn, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979))).

And, because the only facts alleged by Chapman that could support claims under Sections 1985 and 1986 "stem from acts of employment discrimination, she may not use § 1985(3) or § 1986, as a remedy." *Id.* (citations omitted).

## IV. The Court should relinquish jurisdiction over the remaining claims, under Texas's common law.

For the reasons set out above, Chapman has not carried her burden to provide

the Court enough factual matter (accepted as true) to suggest that she is entitled to relief based on a claim arising under federal law – nor has she shown (as set out below) that leave to amend or supplement should be granted as to these claims – the alleged violations of which provide for federal question jurisdiction under 28 U.S.C. § 1331, "an independent basis of subject matter jurisdiction" that then allows for supplemental jurisdiction under 28 U.S.C. § 1367. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

Accordingly, if there are remaining claims arising under state law, the Court should decline to exercise supplemental jurisdiction over those claims.

To determine whether it should "relinquish jurisdiction over pendent state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)" – "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction" – as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *see also IntegraNet Physician Res., Inc. v. Texas Indep. Providers, L.L.C.*, 945 F.3d 232, 241-43 (5th Cir. 2019), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc).

As "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), "[t]he overall balance of the statutory factors is important," *Enochs*, 641 F.3d at 159 (citation omitted).

Here, that balance favors relinquishing jurisdiction over any remaining state law claims at the pleadings stage, to allow Chapman to pursue those claims in a state forum if she so chooses.

## V. The Court should deny Chapman's request for leave to supplement or amend her claims.

First, Chapman's November 18 motion cannot prevail under Rule 15(d) because Chapman fails to allege factual content occurring since the filing of the operative complaint. *See Burns*, 158 F.3d at 343.

Nor does the November 18 motion provide a basis for further leave to amend under Rule 15(a), particularly considering that Chapman was allowed leave to file a second amended complaint after her cases were consolidated and after she was afforded notice as to the deficiencies of her allegations through (1) findings, conclusions, and a recommendation entered by the undersigned on February 21, 2023 [Dkt. No. 13] – which were entered only after the Court entered a notice of deficiency as to the original complaint and Chapman filed an amended complaint, *see* Dkt. Nos. 7-12 – and (2) the motion to dismiss that ADT filed in the removed case prior to consolidation.

The procedural history of this consolidated action therefore reflects that Chapman has now stated her best case. *See Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) ("Ordinarily, a *pro se*

litigant should be offered an opportunity to amend his complaint before it is dismissed. Rule 15(a) provides that leave to amend shall be freely given when justice so requires. The language of this rule evinces a bias in favor of granting leave to amend. Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case. A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint. A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court. Similarly, a district court need not grant a futile motion to amend." (cleaned up)).

That said, the opportunity file objections to these findings, conclusions, and recommendation (further explained below) allows Chapman still another chance to show that this case should not be dismissed to the extent recommended by the undersigned and that the Court should instead grant her leave to further amend her claims. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

## Recommendation

The Court should grant Defendant ADT LLC's motion to dismiss the second amended complaint [Dkt. No. 39]; deny Plaintiff Sonya Chapman's motion for leave

to supplement (or to further amend) [Dkt. No. 55]; and enter judgment dismissing Chapman's claims under federal law and the Texas Constitution with prejudice and dismissing any remaining claims under Texas common law without prejudice to Chapman's ability to pursue those claims in state court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 28, 2023

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE